**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

LATAM LOGISTICS INVESTMENTS, LLC and
MICHAEL P. FANGMAN,                                    **Case No. 1:25-cv-21160-JB**

               Plaintiffs,

                  v.

LOGISTIC PROPERTIES OF THE AMERICAS,
THOMAS J. MCDONALD, ESTEBAN
SALDARRIAGA, PAUL SMITH and ANNETTE
FERNANDEZ,

               Defendants.

_____/

**DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT BASED
ON *FORUM NON CONVENIENS* AND FAILURE TO STATE A CLAIM**

**TABLE OF CONTENTS**

TABLE OF CITATIONS ...............................................................................................................iii

INTRODUCTION ....................................................................................................................... 1

FACTUAL BACKGROUND........................................................................................................ 2

I.     Plaintiffs' Allegations ....................................................................................................... 2

     A.     The Parties ...........................................................................................................2

     B.     Fangman's Default on his Tax Loans ..................................................................3

     C.     The SPAC Merger and the Allegedly False Public Statements .............................4

II.     The Pledge Agreement...................................................................................................... 5

III.     The First Motion to Dismiss ............................................................................................. 7

ARGUMENT............................................................................................................................... 7

I.     The First Amended Complaint Should be Dismissed Based on the Doctrine of *Forum Non Conveniens* ............................................................................................................... 7

     A.     Legal Standard ....................................................................................................7

     B.     Plaintiffs Cannot Evade the Panamanian Forum Selection Clause through Artful Pleading........................................................................................................8

     C.     The Panamanian Forum Selection Clause is Valid and Enforceable.....................10

     D.     The Relevant *Forum Non Conveniens* Public Factors Favor Dismissal................12

II.     The Federal Securities Law Claims Fail Under Rule 12(b)(6) and the PSLRA ............... 14

     A.     The Rule 10b-5 Claim (Count 1) Should be Dismissed .......................................14

     B.     The Section 11 Claim (Count 3) Should be Dismissed ........................................16

     C.     The Section 12(a)(2) Claim (Count 4) Should be Dismissed ................................17

     D.     The Control Person Claims (Counts 2 and 5) Should be Dismissed .....................18

III.     The Fraud, Unjust Enrichment and Civil Conspiracy Claims Fail Under Rule 12(b)(6) . 19

     A.     The Fraud Claim (Count 6) Should be Dismissed.................................................19

i

ii

B.      The Unjust Enrichment Claim (Count 7) Should be Dismissed ...........................19

C.      The Civil Conspiracy Claim (Count 8) Should be Dismissed ..............................20

CONCLUSION.................................................................................................................... 20

**TABLE OF CITATIONS**

Cases

*Am. United Life Ins. Co. v. Martinez,*
  480 F.3d 1043 (11th Cir. 2007) ................................................................................ 20

*Anderson v. Talentsy, Inc.,*
  599 F. Supp. 3d 1207 (M.D. Fla. 2022) ................................................................... 19

*AQuate II LLC v. Myers,*
  100 F.4th 1316 (11th Cir. 2024) .............................................................................. 11

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas,*
  571 U.S. 49 (2013) ........................................................................................... 7, 11, 12

*Basic Inc. v. Levinson,*
  485 U.S. 224 (1988) .................................................................................................. 16

*Beach TV Cable Co., Inc. v. Walsh,*
  2023 WL 2731708 (N.D. Fla. Jan. 13, 2023) ............................................................ 8

*Blue Chip Stamps v. Manor Drug Stores,*
  421 U.S. 723 (1975) .................................................................................................. 14

*Cantley v. Ducharme,*
  2011 WL 611623 (S.D. Fla. Feb. 15, 2011) ............................................................ 11

*Carvelli v. Ocwen Fin. Corp.,*
  934 F.3d 1307 (11th Cir. 2019) .......................................................................... 14, 15

*Davis v. Avvo, Inc.,*
  2011 WL 4063282 (M.D. Fla. Sept. 13, 2011) ........................................................ 10

*Day v. Taylor,*
  400 F.3d 1272 (11th Cir. 2005) ................................................................................. 6

*Del Istmo Assur. Corp. v. Platon,*
  2011 WL 5508641 (S.D. Fla. Nov. 9, 2011) ............................................................ 11

*Don't Look Media Ltd. Liab. Co. v. Fly Victor Ltd.,*
  999 F.3d 1284 (11th Cir. 2021) ................................................................................ 11

*Don't Look Media, LLC v. Fly Victor Ltd.,*
  2020 WL 7481448 (S.D. Fla. Feb. 5, 2020) .............................................................. 8

*Fin. Sec. Assur., Inc. v. Stephens, Inc.,*
  500 F.3d 1276 (11th Cir. 2007) ................................................................................ 14

*FindWhat Inv. Grp. v. FindWhat.com*,
   658 F.3d 1282 ................................................................................................ 15, 16

*Food Mktg. Consultants, Inc. v. Sesame Workshop*,
   No. 09-61776-CIV, 2010 WL 1571206 (S.D. Fla. Mar. 26, 2010) ........................... 8

*Gonzalez v. Watermark Realty Inc.*,
   2010 WL 1299740 (S.D. Fla. Mar. 30, 2010) ...................................................... 12

*Gordon v. Sandals Resorts Int'l, Ltd.*,
   418 F. Supp. 3d 1132 (S.D. Fla. 2019) ............................................................... 13

*Grand Lodge of Pa. v. Peters*,
   550 F. Supp. 2d 1363 (M.D. Fla. 2008) .............................................................. 17

*Herman & MacLean v. Huddleston*,
   459 U.S. 375 (1983) ........................................................................................ 17

*HNA LH OD, LLC v. Loc. House Int'l, Inc.*,
   2021 WL 4459404 (S.D. Fla. Sept. 29, 2021) ....................................................... 9

*In re Banco Santander Sec.-Optimal Litig.*,
   732 F. Supp. 2d 1305 (S.D. Fla. 2010) ............................................................... 13

*Jiangsu Hongyuan Pharm. Co. v. DI Glob. Logistics Inc.*,
   159 F. Supp. 3d 1316 (S.D. Fla. 2016) ................................................................. 6

*Johnson v. Catamaran Health Sols., LLC*,
   687 F. App'x 825 (11th Cir. 2017) .................................................................... 20

*Landau v. Newland Int'l Props., Corp.*,
   2011 WL 13227739 (S.D. Fla. June 10, 2011) ...................................................... 11

*McClain v. Iradimed Corp.*,
   111 F. Supp. 3d 1293 (S.D. Fla. 2015) ............................................................... 18

*Miyahira v. Vitacost.com, Inc.*,
   715 F.3d 1257 (11th Cir. 2013) ......................................................................... 18

*MS Dealer Serv. Corp. v. Franklin*,
   177 F.3d 942 (11th Cir. 1999) ............................................................................ 9

*Open Sea Distribution Corp. v. Artemis Distribution, LLC*,
   692 F. Supp. 3d 1151 (M.D. Fla. 2023) .............................................................. 19

*Oribe Hair Care, LLC v. Canales*,
   2017 WL 2059582 (S.D. Fla. May 15, 2017) ..................................................... 1, 8

iv

*Otto Candies, LLC v. Citigroup, Inc.*,
   963 F.3d 1331 (11th Cir. 2020) ................................................................................. 2

*Pelletier v. Stuart-James Co.*,
   863 F.2d 1550 (11th Cir. 1989) ............................................................................... 14

*Pinter v. Dahl,*
   486 U.S. 622 (1988) ................................................................................................. 18

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981) ............................................................................................ 12, 13

*Scotts Co. v. Hacienda Loma Linda*,
   942 So. 2d 900 (Fla. 3d DCA 2006) ....................................................................... 12

*Shevland v. Orlando*,
   629 F. Supp. 3d 1252 (S.D. Fla. 2022) ..................................................................... 4

*Stewart Org., Inc. v. Ricoh Corp.*,
   810 F.2d 1066 (11th Cir. 1987) ................................................................................. 9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
   551 U.S. 308 (2007) ................................................................................................. 15

*TSC Indus., Inc. v. Northway, Inc.*,
   426 U.S. 438 (1976) ................................................................................................. 15

*Turner v. Costa Crociere S.p.A.*,
   9 F.4th 1341 (11th Cir. 2021) ...................................................................... 7, 10, 12

*Usme v. CMI Leisure Mgmt., Inc.*,
   106 F.4th 1079 (11th Cir. 2024) ........................................................................... 8, 9

*Wagner v. First Horizon Pharm. Corp.*,
   464 F.3d 1273 (11th Cir. 2006) ......................................................................... 16, 17

*Weisman v. S. Wine & Spirits of Am., Inc.*,
   297 So. 3d 646 (Fla. 4th DCA 2020) ...................................................................... 20

Statutes

15 U.S.C. § 77*l*(a) .......................................................................................................... 18

15 U.S.C. § 78u–4 .......................................................................................................... 14

15 U.S.C. § 78u–4(b)(2) ................................................................................................ 15

vi

Rules

Fed. R. Civ. P. 12(b)(6)................................................................................................................. 1, 2

Federal Rule of Civil Procedure 8(a)(2) ....................................................................................... 14

Federal Rule of Civil Procedure 9(b)....................................................................................... 14, 16

Defendants Logistic Properties of the Americas, Thomas J. McDonald, Esteban Saldarriaga, Paul Smith and Annette Fernandez (collectively, "Defendants") respectfully move to dismiss pursuant to the doctrine of *forum non conveniens* and Fed. R. Civ. P. 12(b)(6).

### INTRODUCTION

Plaintiffs' first amended complaint (ECF 31, "FAC") does nothing to cure the fatal defects in their original complaint (ECF 1). As shown in Defendants' first motion to dismiss (ECF 26), this is a straightforward contract dispute: Plaintiffs borrowed, and defaulted on, millions of dollars in loans from a Panamanian company, former defendant Latam Logistics Properties, S.A. ("LLP").[1] As collateral for the loans, Fangman pledged shares of LLP that Fangman beneficially owned through his entity, Plaintiff Latam Logistics Investments, LLC ("LLI"), pursuant to a Pledge Agreement governed by Panamanian law and containing a mandatory Panamanian forum selection clause. The original complaint asserted a claim against LLP for breach of the Pledge Agreement, in addition to various non-contract claims against LLP and the other Defendants, all premised on the same theory that Plaintiffs were deprived of their purported contractual right to receive the surplus value of the pledged shares after repayment of the debt.

Defendants moved to dismiss the original complaint based on the Panamanian forum selection clause and failure to state a claim. (ECF 26.) Rather than defend their original complaint, Plaintiffs voluntarily dismissed LLP from the case and filed an amended complaint removing the claim for breach of the Pledge Agreement. (ECF 30-31.) But this tactic will not work. Courts consistently reject "attempts to evade enforcement of forum selection agreements through artful pleading of tort claims in the context of a contract dispute," *Oribe Hair Care, LLC v. Canales,*

---

[1] On May 23, 2025, Plaintiffs filed a Notice of Voluntary Dismissal of LLP. ECF 30.

2017 WL 2059582, at *4 (S.D. Fla. May 15, 2017) (cleaned up[2]), of which the FAC is a particularly egregious example. Critically, Defendants' first motion to dismiss explained why the "Panama forum selection clause is not limited to the breach of contract claim against LLP (Count Six) and instead applies to all claims asserted against all defendants" (ECF 26 at 9-11), yet Plaintiffs offer no response.  In short, Plaintiffs' artful pleading changes nothing and this action should be dismissed based on *forum non conveniens*.

Alternatively, now that the breach of contract claim has been voluntarily dismissed, the Court could simply dismiss the remaining claims under Rule 12(b)(6).  The federal securities claims are still fatally deficient for the reasons set forth in the first motion to dismiss.  (ECF 26 at 12-17.)  And even assuming, *arguendo*, that the non-statutory claims for fraud, unjust enrichment and civil conspiracy somehow escape the Pledge Agreement's broad choice of law and forum selection clauses, they fail to state plausible claims under Florida law.

Thus, the Court should dismiss the entire action either for *forum non conveniens* or failure to state a claim under Rule 12(b)(6).

## FACTUAL BACKGROUND

### I.      Plaintiffs' Allegations

The original complaint and the FAC contain virtually identical allegations, which the Court must accept as true solely for this motion.  *See Otto Candies, LLC v. Citigroup, Inc.*, 963 F.3d 1331, 1336 (11th Cir. 2020).

### A.      The Parties

Plaintiff Michael P. Fangman, Jr. is a United States citizen who "maintains his principal residence in San José, Costa Rica."  (FAC ¶ 21.)  Plaintiff LLI is a Delaware limited liability

---

[2] Unless otherwise indicated, all case quotations have been cleaned up by omitting internal quotation marks, citations, alterations and footnotes.

company "beneficially owned" by Fangman and which held an 8% equity interest in former defendant LLP.  (*Id.*  ¶¶ 3, 20.)  Fangman describes himself as a "founder and former executive of LLP" (*id*. ¶ 3), but claims he was terminated in November 2022 because of a dispute over whether LLP should delist from the Colombian stock exchange (*id*. ¶¶ 48-50).

LLP, in turn, is a *sociedad anónima* incorporated under the laws of Panama, where it was formerly organized as a limited liability company.  (Orig. Compl. ¶¶ 21, 41; FAC ¶¶ 6, 42.)  "In early 2015, Jaguar Growth Partners LLC ('Jaguar') joined the company."  (FAC ¶ 34.)  In March 2024, LLP merged into defendant Logistic Properties of the Americas ("LPA"), a Cayman Islands exempted corporation whose shares are publicly traded on NYSE American.  (*Id*. ¶¶ 1, 22.)  Upon consummating the merger, "the historical operations and statements of LLP were adopted by LPA," and LPA assumed LLP's existing business as a "developer, owner, and manager of institutional quality, industrial and logistics real estate in Central and South America."  (*Id*. ¶ 4.)

Finally, individual defendants Thomas J. McDonald, Esteban Saldarriaga, Paul Smith and Annette Fernandez are officers or directors of LLP and LPA who are alleged to be directly or vicariously liable under various theories.  (*Id*. ¶¶ 23-27.)

### B.   Fangman's Default on his Tax Loans

Fangman's financial interests in LLP generated a large tax burden.  To help him pay these taxes, between 2017 and 2020, LLP made "tax loans" to LLI for the benefit of Fangman totaling $4.165 million.  (FAC ¶¶ 35-38.)  The loans were evidenced by promissory notes and secured by LLI's equity in LLP pursuant to a Pledge Agreement.  (*Id*. ¶¶ 39-40.)  In 2021 and 2022, LLI received additional "tax loans" of $685,000 and $2,100,000, respectively.  (*Id*. ¶¶ 44-47.)

When the loans matured on December 31, 2023, LLP promptly demanded payment.  (*Id*. ¶¶ 63-65.)  Plaintiffs never responded (*id*. ¶ 68), and so LLP exercised its rights upon an event of default.  As Plaintiffs acknowledged in their breach of contract claim against LLP, those rights

include "the right to sell or dispose of LLI's shares of LLP securing the promissory notes or to transfer title to the shares to LLP." (Orig. Compl. ¶ 138.)

### C. The SPAC Merger and the Allegedly False Public Statements

"On August 15, 2023, LLP and a SPAC entity named 'two' announced publicly their intentions to enter into a Business Combination Agreement for merger into a newly created entity," which ultimately became LPA.[3] (FAC ¶ 51.) Under this proposed merger, LLP's ordinary shares would be cancelled in exchange for the right to receive LPA ordinary shares. (*Id*. ¶ 53.) Plaintiffs were fully aware that they had pledged LLI's shares of LLP as collateral for the defaulted loans. Nevertheless, they apparently assumed that the collateral would be exchanged for LPA shares valued at $22,880,000, and they would receive any surplus after repayment of the tax loans. (*Id*. ¶ 54.) The merger was consummated on March 27, 2024, and on the following day LPA's shares were listed for trading on NYSE American. (*Id*. ¶¶ 79-80.)

The FAC references various public filings that LPA made in connection with the merger and subsequent share listing. These include Amended Registration Statements on January 16, 2024, February 23, 2024, and March 6, 2024 (*id*. ¶ 69); a Prospectus issued March 12, 2024 (*id*. ¶ 73); a Shell Company Report filed March 29, 2024 (*id*. ¶ 81); an Annual Report filed April 26, 2024 (*id*. ¶ 91); and a Prospectus issued September 20, 2024 (*id*. ¶ 104). Although not entirely clear, the FAC appears to rely on three allegedly false statements in some of these filings.

---

[3] "A SPAC is a publicly traded corporation with a two-year life span formed with the sole purpose of effecting a merger, or 'combination,' with a privately held business to enable it to go public." *Shevland v. Orlando*, 629 F. Supp. 3d 1252, 1254 n.2 (S.D. Fla. 2022) (quoting Max H. Bazerman & Paresh Patel, *SPACs: What You Need to Know*, Harvard Business Review, July-August 2021, https://hbr.org/2021/07/spacs-what-you-need-to-know).

First, the FAC alleges that the February 23, 2024 and March 6, 2024 Amended Registration Statements state that LLI's shares are "subject to a foreclosure proceeding in connection with a loan that is now in default." (*Id.* ¶ 70.) Plaintiffs do not dispute that the loan was in default, the shares had been pledged as collateral for the loan, and the secured party (LLP) had the right to foreclose. (*See* Orig. Compl. ¶ 138.) Instead, they claim this statement is false because "[i]n truth, no foreclosure proceeding has ever been initiated against LLI." (FAC ¶ 71.)

Second, the FAC alleges that the March 12, 2024 Prospectus states that, "as of March 12, 2024, LLI owned 8% of LLP's issued and outstanding shares" and "held a right of redemption for ownership of LPA ordinary shares between 6% and 6.6% of the issued shares after the Business Combination," but also "reiterated the false claim … that LLI's shares of LLP were subject to a foreclosure proceeding." (*Id.* ¶ 75.) Plaintiffs say they were misled because "LLI had every reason to believe" that its LLP shares could be exchanged post-merger for LPA shares that "exceeded the value of the promissory note and tax loans … by nearly $15 million." (*Id.* ¶ 76.)

Third, the FAC alleges that on March 29, 2024, LPA filed a Shell Company Report stating that on March 12, 2024, "LLI entered into an assignment agreement with LLP, pursuant to which LLI unconditionally and irrevocably assigned in favor of LLP the right to receive 2,288,000" LPA shares. (*Id.* ¶ 81.) According to Plaintiffs, this statement is false and misleading because they deny the existence of any assignment agreement. (*Id.* ¶ 82.) The FAC also suggests that not making this supposedly false statement earlier in the LPA share listing process was itself deceptive, because it "prevented LLI from discovering the scheme until after it was refused its LPA ordinary shares or the cash payment for liquidation of the LLP shares." (*Id.* ¶ 87.)

## II.     The Pledge Agreement

Both the original complaint and FAC heavily rely on the Pledge Agreement and its purported requirement that "LLP … apply any money or value received or recovered (by sale or

5

transfer), first, to the discharge of the promissory notes and second, to pay LLI any surplus." (FAC ¶ 98.) Thus, the Court may consider the Pledge Agreement even though Plaintiffs chose not to attach it to either complaint. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) ("the court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed," meaning "the authenticity of the document is not challenged"); *Jiangsu Hongyuan Pharm. Co. v. DI Glob. Logistics Inc.*, 159 F. Supp. 3d 1316, 1322 (S.D. Fla. 2016) ("a court may consider matters outside the pleadings in ruling on a motion to dismiss based on *forum non conveniens*.").

As relevant here, the Pledge Agreement contains both a mandatory Panamanian forum selection clause and a broad Panamanian choice of law provision. The forum selection clause provides:

> The courts of the Republic of Panama have exclusive jurisdiction to settle any dispute arising out of or in connection with this Pledge (including a dispute regarding the existence, validity or termination of this Pledge) (a **Dispute**).
>
> The Parties agree that the courts of the Republic of Panama are the most appropriate and convenient courts to settle Disputes and accordingly no party will argue to the contrary.

(Declaration of Joshua B. Katz, Ex. A § 27.2.)

The choice of law clause provides:

> The laws of the Republic of Panama govern this Pledge, its interpretation and any non-contractual obligations arising from or connected with it.

(*Id.* § 27.1.)

6

**III.     The First Motion to Dismiss**

Defendants moved to dismiss the original complaint in its entirety based on *forum non conveniens* and, with respect to the federal securities claims, Rule 12(b)(6).  As for the original complaint's remaining claims—breach of contract, fraud, unjust enrichment and civil conspiracy—Defendants explained that they were governed by the Pledge Agreement's broad Panama choice of law and forum selection clauses.  (ECF 26.)

Rather than defend their original complaint, Plaintiffs unilaterally dismissed all claims against LLP (ECF 30) and deleted the claim for breach of the Pledge Agreement from the FAC (ECF 31).  As demonstrated below, however, Plaintiffs' tactical amendment changes nothing.  This case still belongs in Panama, and the FAC still fails to state any viable claim for relief against any of the Defendants.

ARGUMENT

**I.     The First Amended Complaint Should be Dismissed Based on the Doctrine of *Forum Non Conveniens***

**A.     Legal Standard**

"[T]he appropriate way to enforce a forum-selection clause pointing to a … foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 60 (2013).  "Normally, to obtain a *forum non conveniens* dismissal, the moving party must demonstrate that (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *Turner v. Costa Crociere S.p.A.*, 9 F.4th 1341, 1345 (11th Cir. 2021).

"The presence of a forum selection clause, however, modifies this analysis in important ways." *Id.*  "First, the plaintiff's choice of forum merits no weight. Rather, as the party defying

7

the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* "Second, a binding forum-selection clause requires the court to find that the *forum non conveniens* private factors entirely favor the selected forum." *Id.* "As a result, the Supreme Court has said that the existence of a valid and enforceable forum-selection clause is essentially dispositive in the *forum non conveniens* analysis." *Usme v. CMI Leisure Mgmt., Inc.*, 106 F.4th 1079, 1086 (11th Cir. 2024).

**B. Plaintiffs Cannot Evade the Panamanian Forum Selection Clause through Artful Pleading**

The law is settled that a "Plaintiff's exclusion of the Agreement in its pleadings does not preclude the applicability or enforceability of the Agreement's forum-selection clause." *Don't Look Media, LLC v. Fly Victor Ltd.*, 2020 WL 7481448, at *4 (S.D. Fla. Feb. 5, 2020), *aff'd*, 999 F.3d 1284 (11th Cir. 2021); *Oribe Hair Care, LLC*, 2017 WL 2059582, at *4 ("OHC's decision to assert a variety of claims in its Complaint—while conveniently excluding a breach of contract claim—does not preclude the applicability or enforceability of the agreements' forum-selection clauses."). Rather, "courts should subject claims pled as so-called 'non-contractual' causes of action to vigorous scrutiny to ensure that the intent of the parties in entering into the forum-selection clause is upheld." *Food Mktg. Consultants, Inc. v. Sesame Workshop*, No. 09-61776-CIV, 2010 WL 1571206, at *13 (S.D. Fla. Mar. 26, 2010), *report and recommendation adopted*, 2010 WL 1571210 (S.D. Fla. Apr. 20, 2010). Indeed, "courts regularly apply forum-selection clauses to claims arising out of or requiring an interpretation of the overall contract—not just claims for breach of that contract." *Beach TV Cable Co., Inc. v. Walsh*, 2023 WL 2731708, at *1 (N.D. Fla. Jan. 13, 2023).

Here, the Pledge Agreement's forum selection clause confers on the courts in Panama "exclusive jurisdiction to settle any dispute *arising out of or in connection with* this Pledge

8

(including a dispute regarding the existence, validity or termination of this Pledge)." (Katz Decl. Ex. A § 27.2.1 (emphasis added).) By its plain terms, the clause is not limited to claims for breach of contract, nor to disputes in which only LLI and LLP are parties. When a forum selection clause uses the phrase "arising out of or in connection with" the contract, it "includes all causes of action arising directly or indirectly from the business relationship evidenced by the contract." *Stewart Org., Inc. v. Ricoh Corp.*, 810 F.2d 1066, 1070 (11th Cir. 1987) (en banc), *aff'd and remanded,* 487 U.S. 22 (1988). This standard is easily satisfied here. Although repackaged under a variety of non-contract theories, Plaintiffs' claims all hinge on their contention that they were denied surplus value the Pledge Agreement entitled them to receive. Thus, the "forum-selection clause cover[s] the non-contractual claims because adjudication of the claims would require consideration of the parties' rights under the agreement in question." *HNA LH OD, LLC v. Loc. House Int'l, Inc.*, 2021 WL 4459404, at *8 (S.D. Fla. Sept. 29, 2021).

For largely the same reasons, Plaintiffs cannot evade the forum selection clause simply by dismissing LLP from the case. As non-signatories to the Pledge Agreement, the remaining Defendants may enforce the forum selection clause under a variety of doctrines, including "through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *Usme*, 106 F.4th at 1087-88.

"Equitable estoppel allows a non-party to enforce the provisions of a contract against a signatory in two circumstances." *Id.* "The first is when the signatory to the contract relies on the terms of the contract to assert his or her claims against the non-party." *Id.* "And the second is when the signatory raises allegations of interdependent and concerted misconduct by both the non-party and one or more of the signatories to the contract." *Id.*

9

Both circumstances are present here.  As discussed, Plaintiffs' claims against LPA and the individual defendants necessarily reference or presume the existence of the Pledge Agreement.  *See MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999) ("When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement.").  And LLI's various theories of liability against LPA and the individual defendants "raise[] allegations of interdependent and concerted misconduct" with LLP.  (*See, e.g.*, FAC ¶¶ 109-110 (alleging all 10b-5 defendants "engaged in a plan, scheme [sic] conspiracy, and course of conduct by which they … misrepresented the truth about LPA's and LLP's business, operations, and financial condition"); *id*. ¶ 163 ("LPA and LLP are operated by a common group of officers and directors, and LPA controls the actions of its wholly owned subsidiary").)

Not only are Plaintiffs' non-contract claims interdependent with the Pledge Agreement, but the non-signatories' potential defenses are as well.  For example, the Pledge Agreement provides that "[n]one of the Pledgee *or any of its respective officers or employees* shall have any responsibility or liability" for the type of acts or omissions alleged in the FAC, "except in the case of gross negligence or willful misconduct on the part of that person."  (Katz Decl. Ex. A at § 13.1 (emphasis added).)  Accordingly, Plaintiffs must sue the remaining Defendants only in Panama.

### C.      The Panamanian Forum Selection Clause is Valid and Enforceable

By declining to oppose the first motion and instead dropping LLP from the case, Plaintiffs tacitly concede that the forum selection clause is valid and enforceable.  That concession is well-taken.  "Forum selection clauses are presumptively valid and enforceable unless the plaintiff makes a strong showing that enforcement would be unfair or unreasonable under the circumstances."  *Turner*, 9 F.4th at 1345.  "A plaintiff can defeat this presumption by showing that (1) the clause was induced by fraud or overreaching; (2) the plaintiff would be deprived of its day in court

10

because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy." *Id.* "For each category, the complaining party bears a heavy burden of demonstrating unreasonableness," *Davis v. Avvo, Inc.*, 2011 WL 4063282, at *2 (M.D. Fla. Sept. 13, 2011), and "[t]hese factors will rarely invalidate a forum-selection clause, which is, after all, a contract between two parties." *AQuate II LLC v. Myers*, 100 F.4th 1316, 1323 (11th Cir. 2024). Plaintiffs cannot defeat the presumption of validity.

First, the FAC does not and could not allege that the forum selection clause was induced by fraud or overreaching, and any attempt to rely on the "broader alleged fraudulent scheme to deprive" LLI of shares in LPA "is a nonstarter." *Don't Look Media Ltd. Liab. Co. v. Fly Victor Ltd.*, 999 F.3d 1284, 1298 (11th Cir. 2021). "The fraud exception does not mean that any time a dispute arising out of a transaction is based upon an allegation of fraud, as in this case, the clause is unenforceable. Rather, it means that a forum-selection clause in a contract is not enforceable if the inclusion of that clause in the contract was the product of fraud or coercion." *Id.*

Second, there is no inconvenience or unfairness in requiring Plaintiffs to proceed in Panama. Plaintiffs expressly "agree[d] that the courts of the Republic of Panama are the most appropriate and convenient courts to settle Disputes and accordingly no party will argue to the contrary." (Katz Decl. Ex. A § 27.2.2.). "When parties agree to a forum-selection clause, they waive the right to challenge a preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Atl. Marine Constr. Co.*, 571 U.S. at 62. Moreover, although Fangman is a U.S. citizen, "his principal residence [is] in San José, Costa Rica." (FAC ¶ 21.) Costa Rica shares a border with Panama.

Third, courts in this district have repeatedly recognized that litigants alleging similar types of claims will not be deprived of a remedy or their day in court in Panama. *See, e.g., Del Istmo*

11

*Assur. Corp. v. Platon*, 2011 WL 5508641, at *5 (S.D. Fla. Nov. 9, 2011) ("conclud[ing] that Panama is an available and adequate forum" for fraud claims); *Landau v. Newland Int'l Props., Corp.*, 2011 WL 13227739, at *1 (S.D. Fla. June 10, 2011) (enforcing Panama forum selection clause as to rescission claim for selling unregistered securities under Securities Act § 5); *Cantley v. Ducharme*, 2011 WL 611623, at *5 (S.D. Fla. Feb. 15, 2011) (enforcing clause as to fraud, conspiracy and unjust enrichment claims: "the Court does not accept the [plaintiffs'] suggestion that they will be deprived a day in court if the Court enforces the forum selection clause, nor that Panama law is fundamentally unfair."); *Gonzalez v. Watermark Realty Inc.*, 2010 WL 1299740, at *6 (S.D. Fla. Mar. 30, 2010) (enforcing Panama forum selection clause for fraudulent inducement).

Fourth, enforcing the clause would contravene no conceivable public policy. If anything, public policy strongly favors dismissal of this suit which, at bottom, is an internal dispute among the shareholders of a Panamanian company and concerns acts that occurred in Panama pursuant to a contract governed by Panamanian law. *See Scotts Co. v. Hacienda Loma Linda*, 942 So. 2d 900, 902 (Fla. 3d DCA 2006) (granting *forum non conveniens* dismissal in favor of Panama and noting "Florida has no interest in adjudicating the dispute of a Panama corporation whose property was injured in Panama by events taking place there.").

### D.       The Relevant *Forum Non Conveniens* Public Factors Favor Dismissal

As discussed, "a binding forum-selection clause requires the court to find that the *forum non conveniens* private factors entirely favor the selected forum." *Turner*, 9 F.4th at 1345. "As a consequence, a district court may consider arguments about public-interest factors only." *Atl. Marine Const. Co.,* 571 U.S. at 64. "Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.*

"The public factors bearing on the question include[] the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the

12

interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981). Here, all relevant factors favor Panama.

First, Panama law governs this dispute. As noted, the Pledge Agreement provides that "[t]he laws of the Republic of Panama govern this Pledge, its interpretation and any non-contractual obligations arising from or connected with it." (Katz Decl. Ex. A § 27.1.) Thus, this factor heavily favors dismissal. *See In re Banco Santander Sec.-Optimal Litig.*, 732 F. Supp. 2d 1305, 1339 (S.D. Fla. 2010), *aff'd sub nom. Inversiones Mar Octava Limitada v. Banco Santander S.A.*, 439 F. App'x 840 (11th Cir. 2011) ("Choice of law considerations, particularly the application of foreign rules of decision, are an important public factor in considering a motion to dismiss for *forum non conveniens*.").

Second, Panama has a much stronger "local interest" in resolving this dispute than Florida. LLP is organized under the laws of Panama, and the complaint alleges no connection between Plaintiffs and Florida. Indeed, Florida's only apparent connection to this dispute is that some, but not all, of the *Defendants* are alleged to reside in Florida.

Third, although the "court congestion" factor "generally does not warrant significant consideration," "the Southern District of Florida has one of the busiest dockets in the country, and this factor, thus weighs in favor of dismissal." *Gordon v. Sandals Resorts Int'l, Ltd.*, 418 F. Supp. 3d 1132, 1142 (S.D. Fla. 2019).

Finally, the FAC has a jury trial demand and so retaining this case risks "the unfairness of burdening citizens in an unrelated forum with jury duty." *Piper Aircraft Co.*, 454 U.S. at 241 n.6.

13

## II.      The Federal Securities Law Claims Fail Under Rule 12(b)(6) and the PSLRA

### A.      The Rule 10b-5 Claim (Count 1) Should be Dismissed

"To state a claim for securities fraud under Rule 10b-5, a plaintiff must allege the following elements: (1) a material misrepresentation or omission; (2) made with scienter; (3) a connection with the purchase or sale of a security; (4) reliance on the misstatement or omission; (5) economic loss; and (6) a causal connection between the misrepresentation or omission and the loss, commonly called 'loss causation.'" *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1317 (11th Cir. 2019). In attempting to plead these elements, securities fraud plaintiffs face "a triple-layered pleadings standard." *Id.* They "must satisfy not only the run-of-the-mill federal notice-pleading requirements, *see* Federal Rule of Civil Procedure 8(a)(2), but also the heightened pleading standards found in Federal Rule of Civil Procedure 9(b) and the special fraud pleading requirements imposed by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u–4." *Id.* "Failure to meet any of the three standards will result in a complaint's dismissal." *Id.* Here, the complaint satisfies none of these elements.

Failure to allege the purchase or sale of a security. Perhaps the most glaring defect in the 10b-5 claim is its failure to allege that Plaintiffs either bought or sold a security. "The United States Supreme Court, in *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723 (1975), held that a private damages action under Section 10(b) and Rule 10b–5 is confined to actual purchasers or sellers of securities." *Pelletier v. Stuart-James Co.*, 863 F.2d 1550, 1554–55 (11th Cir. 1989). "Accordingly, a person who alleges a violation of Rule 10b–5 must demonstrate that he is an actual purchaser or seller, or that he was party to a legally enforceable contract to purchase or sell securities." *Id.*

Plaintiffs completely fail to satisfy this requirement. They do not claim that they were defrauded into buying or selling any security, but rather that they were somehow misled into *not*

14

buying or selling securities through LPA's share exchange with LLP.  (*See, e.g.*, FAC ¶ 112 (alleging that but for the purported fraud, "Plaintiffs would have become a party to the sale"); *id*. ¶ 115 ("Plaintiffs, relying on the materially false and misleading statements described herein … were unable to exercise their rights to possess LPA ordinary shares.").)  This is precisely the sort of claim that *Blue Chip Stamps* bars.  See *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1283 (11th Cir. 2007) ("The *Blue Chip Stamps* Court noted that three principal categories of plaintiffs are excluded from standing: (1) potential purchasers of shares who allege that they decided not to purchase because of the alleged violations; (2) actual shareholders in the issuer who allege that they decided not to sell their shares because of the alleged violations; and (3) shareholders, creditors, and perhaps others related to an issuer who suffered loss in the value of their investment due to corporate or insider activities in connection with the purchase or sale of securities which violate Rule 10b-5.").

Failure to allege material misrepresentation or omission.  "A misrepresentation or omission is material if, in the light of the facts existing at the time, a reasonable investor, in the exercise of due care, would have been misled by it." *Carvelli*, 934 F.3d at 1317.  "The question of materiality, it is universally agreed, is an objective one, involving the significance of an omitted or misrepresented fact to a reasonable investor." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 445 (1976).  Here, the allegedly fraudulent scheme is idiosyncratic to Fangman and LLI, and utterly irrelevant to a reasonable member of the investing public.  Indeed, it is inconceivable that anyone who actually purchased or sold LPA's publicly traded shares was concerned with the assignment agreement or the status of a foreclosure in Panama.

Failure to allege scienter.  "[F]or all private Rule 10b–5 actions requiring proof of scienter, 'the complaint shall, with respect to each act or omission alleged to violate this chapter, state with

15

particularity facts giving rise to a strong inference that the defendant acted with the required state of mind [i.e., scienter].'" *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011 (quoting 15 U.S.C. § 78u–4(b)(2)).  "To qualify as 'strong' ... an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 314 (2007).  Plaintiffs' allegations raise no cogent and compelling inference that the allegedly false statements were made with intent to defraud.  Quite the opposite, the far more cogent and compelling explanation is that the statements were made for the mundane purpose of informing investors of the identities of LLP's current shareholders while also clarifying that LLI's status was in flux because it had defaulted on its tax loans secured by the shares.

Failure to allege reliance, economic loss and causation.  Plaintiffs do not plausibly allege that they justifiably relied on any misrepresentation or omission.  Indeed, accepting their allegations as true, they claim that they were fully aware that there were no foreclosure proceedings or assignment agreement.  Plaintiffs could not have relied on a statement they knew to be false. *See Basic Inc. v. Levinson*, 485 U.S. 224, 249 (1988) ("a plaintiff who believed that Basic's statements were false … could not be said to have relied on the integrity of a price he knew had been manipulated.").  Likewise, Plaintiffs do not allege any drop in LPA's share price after the alleged fraud was revealed.

B.      The Section 11 Claim (Count 3) Should be Dismissed

Although Plaintiffs' Securities Act claims are not subject to the PSLRA, they still must be pled with particularity because "Rule 9(b) applies when the misrepresentation justifying relief under the Securities Act is also alleged to support a claim for fraud under the Exchange Act and Rule 10(b)–5." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1277 (11th Cir. 2006).  "While Rule 9(b) does not abrogate the concept of notice pleading, it plainly requires a complaint

16

to set forth (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud." *FindWhat Inv. Grp.*, 658 F.3d at 1296.

Plaintiffs' Section 11 claim is woefully deficient. It indiscriminately incorporates "the allegations contained in the preceding paragraphs" and then declares that LPA's "Registration Statement, initially and as amended, contained untrue statements of material facts, failed to state other facts necessary to make the statements not misleading, and omitted material facts required to be stated therein." (FAC ¶¶ 124-27.) Plaintiffs fail to identify any specific misrepresentations or omissions in any iteration of the initial Registration Statement or its amendments.

Although the usual remedy for this type of "shotgun pleading" is dismissal with leave to amend, *Wagner*, 464 F.3d at 1280, the Court should deny leave here because Plaintiffs have already amended once and any further amendment would clearly be futile. Section 11 creates a cause of action for plaintiffs who "purchased a security issued pursuant to a registration statement." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983); *see also Grand Lodge of Pa. v. Peters*, 550 F. Supp. 2d 1363, 1373–74 (M.D. Fla. 2008) ("To possess standing to sue under Section 11, plaintiffs must be able to trace their purchase of tainted securities to the faulty registration statement."). Neither Fangman nor LLI purchased registered shares of LPA under the registration statement or in secondary trading. Thus, any further amendment would be futile.

### C.      The Section 12(a)(2) Claim (Count 4) Should be Dismissed

Plaintiffs' Securities Act § 12(a)(2) claim fails for the same reasons as the Section 11 claim. Plaintiffs allege that the "Prospectus, especially the March 12, 2024 Prospectus issued for the shareholders of LLP and 'two,' and related oral communications contained untrue statements of

17

material facts, failed to state other facts necessary to make the statements not misleading, and omitted material facts required to be stated therein, as detailed above."  (FAC ¶ 135.)  They do not specify any statements or omissions in the March 12, 2024 Prospectus or in any other prospectus. Nor do they provide any information about the "related oral communications."

As with the Section 11 claim, any further amendment would be futile.  Section 12(a)(2) states that any person who "offers or sells a security … by means of a prospectus or oral communication" that contains an untrue statement of fact or omission "shall be liable … *to the person purchasing such security from him*."  15 U.S.C. § 77*l*(a) (emphasis added).  *See Pinter v. Dahl,* 486 U.S. 622, 644 (1988) ("The purchase requirement clearly confines § 12 liability to those situations in which a sale has taken place. Thus, a prospective buyer has no recourse against a person who touts unregistered securities to him if he does not purchase the securities.").  Here, Plaintiffs purchased no LPA shares at all, much less purchased them from any of the Defendants.

### D.      The Control Person Claims (Counts 2 and 5) Should be Dismissed

Because the FAC fails to plead an underlying claim under the federal securities laws, the control person claims against the individual defendants under Exchange Act § 20(a) and Securities Act § 15 necessarily fail as well.  *See Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1268 (11th Cir. 2013) ("Because Appellants failed to plausibly allege a violation of §§ 11 or 12(a)(2) of the Securities Act, they necessarily failed to plausibly allege a violation of § 15 as well."); *McClain v. Iradimed Corp.*, 111 F. Supp. 3d 1293, 1307 (S.D. Fla. 2015) ("As the Court finds they have failed to state a predicate claim for primary liability under Section 10(b), Plaintiffs cannot, as a matter of law, state a claim under Section 20(a).").

18

### III. The Fraud, Unjust Enrichment and Civil Conspiracy Claims Fail Under Rule 12(b)(6)

By retaining these claims in the FAC, Plaintiffs presumably intend to argue that the claims are somehow exempt from the choice of law and forum selection clauses in the Pledge Agreement. But that effort to evade the Pledge Agreement would only run smack into another fatal problem: Plaintiffs do not state any viable claim under Florida law.

#### A. The Fraud Claim (Count 6) Should be Dismissed

"Under Florida common law, to prove fraud … a plaintiff must prove the defendant made a false statement about a material fact, the defendant knew the fact is false, the defendant made the statement intending to induce the plaintiff to act on it, and, in acting in reliance on the statement, the plaintiff suffered an injury." *Open Sea Distribution Corp. v. Artemis Distribution, LLC*, 692 F. Supp. 3d 1151, 1197 (M.D. Fla. 2023).

Plaintiffs' non-statutory fraud claim recycles the same allegations underlying the securities fraud claims. Indeed, Plaintiffs describe their fraud claim as "inextricably linked to public statements made in SEC filings, public offerings of LPA ordinary shares, and the Business Combination Agreement that created LPA for the purpose of offering securities for trade on the NYSE American." (FAC ¶ 153.) Consequently, this claim fails for much the same reasons as the securities law claims—namely, Plaintiffs do not and cannot allege materiality, scienter, reliance or injury. (*See supra*, at pp. 15-17.)

#### B. The Unjust Enrichment Claim (Count 7) Should be Dismissed

For their unjust enrichment claim, Plaintiffs allege "LPA voluntarily accepted and kept as additional paid-in capital more than $14 million" from the surplus value of the collateral, which LPA then transferred to a PIPE investor. (FAC ¶¶ 157-58.) Preliminarily, Plaintiffs' assertion that LLI's pledged shares were used for the PIPE investment is based on nothing more than the

19

sheer coincidence that "the excess value of the shares taken from LLI (roughly $14.7 million by LPA's valuation) neatly match the value of the shares issued to the PIPE investor ($15 million)." (FAC ¶ 90.)  This rank speculation does not satisfy the *Twombly*/*Iqbal* plausibility standard.

At any rate, "Plaintiffs' allegations do not establish that they have conferred a benefit directly on [LPA], which is an essential element for unjust enrichment under Florida law." *Anderson v. Talentsy, Inc.*, 599 F. Supp. 3d 1207, 1214 (M.D. Fla. 2022).  "The benefit conferred on the defendant must be a <u>direct</u> benefit," and even payments to a subsidiary or majority shareholder are insufficient.  *Johnson v. Catamaran Health Sols., LLC*, 687 F. App'x 825, 830 (11th Cir. 2017) (emphasis in original).  At most, Plaintiffs allege only that they conferred a benefit on LLP, which in turn conferred "a 'stock dividend' of more than $24 million" on LPA.  (FAC ¶ 156.)  This type of indirect benefit cannot support an unjust enrichment claim.

## C.    The Civil Conspiracy Claim (Count 8) Should be Dismissed

Finally, Plaintiffs assert a claim for "civil conspiracy" against LPA and the individual defendants.  (FAC ¶¶ 161-65.)  But, as discussed above, Plaintiffs allege no viable claims, and "a claim that is found not to be actionable cannot serve as the basis for a conspiracy claim."  *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1067 (11th Cir. 2007).  And even if Plaintiffs alleged an actionable claim, "the intracorporate conspiracy doctrine bars the plaintiffs' conspiracy claim."  *Weisman v. S. Wine & Spirits of Am., Inc.*, 297 So. 3d 646, 652 (Fla. 4th DCA 2020).  "That doctrine forecloses an actionable conspiracy between an entity and its officers or agents."  *Id*.  Here, the individual defendants are alleged to be officers or agents of LPA, so the claim is barred.  (FAC ¶¶ 23-27, 114, 120, 144, 162.)

## CONCLUSION

For the foregoing reasons, the FAC should be dismissed in its entirety.

20

Respectfully submitted,

BENNETT AIELLO KREINES
3471 Main Highway, Suite 206
Coconut Grove, Florida 33133-5929
Phone: (305) 358-9011
Facsimile: (305) 358-9012

*By: s/ Jeremy R. Kreines*
Paul Aiello, FBN 909033
paiello@bakattorneys.com
Jeremy R. Kreines, FBN 101119
jkreines@bakattorneys.com

KENT, BEATTY & GORDON, LLP
Jack A. Gordon (*admitted pro hac vice*)
e-mail: jag@kbg-law.com
Joshua B. Katz (*admitted pro hac vice*)
e-mail: jbk@kbg-law.com
11 Times Square
New York, New York 10036
Phone: (212) 421-4300
Facsimile: (212) 421-4303

*Attorneys for Defendants*

### CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of June, 2025, a true and correct copy of the original of this document was submitted through CM/ECF for filing and service upon the attorneys of record in this action.

*By: s/ Jeremy R. Kreines*
Jeremy R. Kreines

21